IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HEATHER JOHNSON,

                    Plaintiff,                        OPINION & ORDER

  v.

                                                        13-cv-144-wmc

BANKERS LIFE AND CASUALTY
COMPANY,

                    Defendant.

Defendant Bankers Life and Casualty Company ("Bankers"), through its authorized agents, sold an individual retirement annuity to plaintiff Heather Johnson and her now-deceased husband.  Plaintiff alleges that she and her husband purchased this annuity, which replaced an existing annuity purchased from another company, because it contained an "annuity income preservation amendment rider" which Bankers represented would keep both the annuity and income from the annuity from affecting their "Medicaid eligibility and spend down provisions/requirements."  When this proved to be untrue following her husband's death, Mrs. Johnson brought this putative class action lawsuit against Bankers for breach of fiduciary duty, negligent and intentional misrepresentation, civil theft pursuant to Wis. Stat. §§ 895.446 and 943.20, and violation of Wisconsin Organized Crime Control Act ("WOCCA"), Wis. Stat. § 946.83.

Before the court is defendant's motion to dismiss all of plaintiff's claims.  (Dkt. #25.)  For the reasons that follow, the court finds (1) Johnson has standing pursuant to Article III to pursue her claims; (2) the complaint fails to allege a fiduciary relationship; (3) the complaint alleges a misrepresentation with sufficient specificity to form the basis

of negligent and intentional misrepresentation claims and a civil theft claim; and (4) the complaint fails to allege an enterprise separate from defendant to plead a WOCCA claim. Accordingly, the court will grant defendant's motion to dismiss plaintiff's breach of fiduciary duty and WOCCA claims and deny it in all other respects.

## ALLEGATIONS OF FACT[1]

In April 2005, Heather and Gary Johnson sold their primary residence and purchased an annuity from Security Benefit Life Insurance Company in the amount of approximately $144,000.  Sometime after that, the Johnsons were contacted by one of Bankers' agents, Craig Chapp, asking them to meet with him to discuss an annuity his company was offering to senior citizens that would protect certain assets during retirement.

In November or December 2005, the Johnsons met with Chapp at their condominium.  During that meeting, they informed Chapp of certain health issues Mr. Johnson was experiencing.  Chapp allegedly then advised the Johnsons that "they should take advantage of a new product offered by Bankers that would protect their assets even if Mr. Johnson had to enter into a nursing home."  (Am. Compl. (dkt. #22) ¶ 10.)  The Amended complaint further alleges that

---

[1] For the purposes of this motion, the court will construe all of plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).  The court considers defendant's motion to dismiss in light of the amended complaint.  While this motion was pending, plaintiff filed a second amended complaint, adding a second named plaintiff and facts specific to her purchase of the annuity at issue.  (Dkt. #55.)  The court will address the status of this pleading at the September 27, 2013, hearing.

> Chapp fraudulently represented that the annuity included a rider entitled 'annuity income preservation amendment rider,' which, Mr. Chapp represented, would protect and/or exclude the assets and/or income of the deferred annuities from Medicaid eligibility and spend down provisions/requirements, thereby allowing them to take full advantage of the Medicaid and/or other governmental aid and benefits for which they were to be eligible without having to use the assets of the annuity to pay expenses otherwise covered by Medicaid.

(*Id.* at ¶ 11.)

Some two years after their meeting with Chapp, the Johnsons decided to liquidate their previously-purchased annuity, resulting in significant penalties, and purchase the Bankers' annuity in the reduced amount of $132,683.72.  This annuity was issued in Mr. Johnson's name with Mrs. Johnson named as the intended beneficiary on January 30, 2008.  (*Id.* at ¶ 14; Ex. A (dkt. #22-1).)   Heather Johnson alleges that she and her husband made the decision to purchase the Bankers annuity "primarily based upon the representations made to them by Mr. Chapp."  (*Id.* at ¶ 13.)

On page nine of the twenty page annuity document, which is attached to the complaint, appears the following language:

### TAX AND LEGAL CONSEQUENCES

This rider may have tax consequences or affect eligibility for Medicaid or other government benefits.  Consult a tax advisor or attorney to assess the impact of this rider on Your specific situation.

(*Id.*, Ex. A (dkt. #22-1) p.9.)

Mr. Johnson passed away in August 2008.  Following his death, Heather Johnson "learned that the representations made by Mr. Chapp concerning the annuity income preservation amendment rider were false and that the annuity would not protect and/or

exclude the assets and/or income of the deferred annuities from Medicaid eligibility and spend down provisions/requirements." (*Id.* at ¶ 15.)

Heather Johnson seeks to represent a class of Wisconsin residents who, based upon representations by Chapp or another Bankers' agent, purchased Bankers annuities that include the annuity income preservation amendment rider. Plaintiff alleges the following causes of action: (1) breach of fiduciary duty; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) civil theft under Wis. Stat. §§ 895.446 and 943.20; and (5) violation of WOCCA.

PRELIMINARY MATTER

Defendant also moves for submission of material outside of the pleadings, attaching two documents to a declaration of defendant's counsel: (1) a purported check from Security Benefit Life Insurance to Bankers Life and Casualty, dated January 18, 2008; and (2) a purported check from Bankers Life and Casualty Company to Heather Johnson, dated September 22, 2008. (Def.'s Mot. to Submit Material Outside of Pleadings (dkt. #27); Declaration of Adam J. Kaiser, Exs. A, B (dkt. ##28-1, 28-2).) In addition to plaintiff's complaint, the court may consider documents to which the complaint had referred, which are "concededly authentic" *and* "central to" the plaintiff's claim. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).[2]

_____

[2] Defendant cites to a Seventh Circuit case, including in a parenthetical the following quoted standard adopted by the court: "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint <u>and</u> are central to his claim." (Def.'s Mot. to Submit (dkt. #27) 1-2 (citing *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994)) (underlining added).) But defendant uses

4

In her amended complaint described above, plaintiff alleges that she and her husband liquidated their previously-purchased annuity and purchased the Bankers' annuity in the amount of $132,683.72. (Am. Compl. (dkt. #2) ¶¶ 12, 14.) Further, plaintiff's damages request is at least in part related to alleged penalties paid to Security Benefit in cashing in the previously-purchased annuity. Accordingly, the court finds that the check from Security Benefit Life Insurance Company to the defendant in the same amount as in the complaint is sufficient to meet the requirements for considering documents outside of the pleadings.

As for the second check -- the one issued by Bankers to plaintiff -- the complaint does not allege that defendant issued Johnson a check or otherwise refer to payment under the policy. More importantly, the issuance of the check is not "central to" plaintiff's claims, which concern alleged misrepresentations and at the point of sale; nor is the check even material to the present motion to dismiss. The court will, therefore, grant defendant's motion to consider the check from Security Benefit to Bankers (dkt. #28-1), but deny defendant's motion to submit the check paid by Bankers to Heather Johnson (dkt. #28-2).

---

a disjunctive "or" in stating the same standard in its brief: "[a] court may consider, in addition to the complaint, any documents if their authenticity is not disputed by the parties, if they are central to plaintiff's claims, or if they are sufficiently referenced in the complaint." (Def.'s Mot. to Submit (dkt. #27) 1 (italics removed; underlining added).) Whether defendant's counsel intentionally changed the Seventh Circuit's use of "and" to "or," this court will not speculate, except to note that the court will not tolerate repeated inaccurate or strained characterizations of cases, especially in light of other citation concerns described below.

OPINION

Bankers moves to dismiss this claim, arguing that (1) Johnson as a third-party beneficiary lacks standing to pursue the present action; (2) plaintiff's breach of fiduciary duty claim fails as a matter of law because Bankers has no independent duty to potential purchasers and was not in a position of trust because of the disclaimer described above; (3) plaintiff's breach of fiduciary duty claim is barred by the statute of limitations; (4) the negligent and intentional misrepresentation claims and civil theft claim all fail because they are premised on a representation about the law and/or a future event; (5) plaintiff's misrepresentation and civil theft claims fail as a matter of law because she cannot establish reasonable reliance due to the presence of the so-called "disclaimer" in the policy; and (6) plaintiff fails to state a WOCCA claim for several reasons, most notably because the defendant is the same entity as the alleged "enterprise."  The court will review each in turn, starting, as it must, with jurisdiction, including defendant's challenge to this court's subject matter jurisdiction.

## I.  Jurisdiction

As an preliminary matter, this court appears to have jurisdiction over the putative class action pursuant to the Class Action Fairness Act of 2005 ("CAFA") 28 U.S.C. § 1332(d).  First, the complaint and notice of removal contain allegations sufficient to demonstrate that there is complete diversity, thus meeting the minimal diversity requirement of CAFA.  *See* 28 U.S.C. § 1332(d)(2)(A) (providing diversity under CAFA is met if "any member of a class of plaintiffs is a citizen of a state different from any

defendant").[3]   Second, plaintiff alleges that the putative class "is estimated to contain hundreds of individuals" (Compl. (dkt. #1-1) ¶ 13), and defendant represents that plaintiffs' estimate is conservative (Not. of Removal (dkt. #1) ¶ 16).  *See* 28 U.S.C. § 1332(d)(5)(B) (requiring a putative class of at least 100 members).  Third, Bankers has credibly estimated that the amount in controversy exceeds $29.5 million (Not. of Removal (dkt. #1) ¶¶ 19-21), easily satisfying the $5 million CAFA threshold.  *See* 28 U.S.C. § 1332(d)(6)  ("[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").  Fourth, the court finds that the discretionary and mandatory exceptions to jurisdiction under CAFA do not apply because Bankers is not a citizen of the State of Wisconsin.  *See* 28 U.S.C. §§ 1332(d)(3), 1332(d)(4)(A) and (B).

This brings the court to Bankers' motion to dismiss all claims because plaintiff Heather Johnson was not a party to the contract between Bankers and her deceased husband and, therefore, lacks standing to proceed, depriving this court of jurisdiction over the dispute.  (Def.'s Br. (dkt. #26) 18.)  To establish standing, a plaintiff must have:

> (1) an 'injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) a causal connection between the injury and the conduct complained of, that is, the injury is fairly traceable to the challenged action of the defendant, not the result of the 'independent action of some third party not before the court'; and (3) a favorable decision likely will redress the injury.

---

[3] Plaintiff Health Johnson is a citizen of Wisconsin.  Defendant Bankers Life and Casualty Company is incorporated in the State of Illinois, with its principal place of business in Chicago.

*O'Sullivan v. City of Chi.*, 396 F.3d 843, 854 (7th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Bankers' challenge goes to the second prong -- whether her injury is "fairly traceable to the challenged action of the defendant."

Bankers argues that Johnson lacks standing as a third-party beneficiary to pursue her fraud claims. The cases cited by defendant in support, however, are easily distinguishable because the plaintiffs in these cases were not privy to the alleged misrepresentations and/or did not take part in the purchase decision. *See Prater v. Wackenhut Corrections Corp.*, No. 01-50792, 44 Fed. App'x 654, 2002 WL 1397163, at *1 (5th Cir. June 14, 2002) (unpublished) (holding that third party beneficiary "has no standing to assert a fraud claim when no misrepresentation was made to him or made with intention of reaching him and when he did not act upon any misrepresentation"); *Solid Gold Casino Hotel & Resort of Tunica, Inc. v. Miles*, No. 02-2863B, 2006 WL 721491, at *2 (W.D. Tenn. Mar. 21, 2006) (finding separate entity not privy to alleged misrepresentations concerning financing and construction of a casino lacked standing to assert fraudulent misrepresentation claim); *Erwin v. Texas Health Choice, L.C.*, 187 F. Supp. 2d 661, 667 (N.D. Tex. 2002) (holding that third-party beneficiary to health care contract between his employer and health care insurer lacked standing solely based on his status to pursue fraudulent inducement and negligent misrepresentation claims); *Maddux v. Philadelphia Life Ins. Co.*, 77 F. Supp. 2d 1123, 1132 (S.D. Cal. 1999) (finding wife lacked standing to pursue fraud claims where "[t]here is no evidence that Philadelphia Life's alleged assurances were ever communicated directly to [the wife] or that [she] directly relied on the statements or terms contained in the life insurance policy"); *In re*

8

*Van Quach*, 187 B.R. 615, 619 n.5 (Bankr. N.D. Ill. 1995) (finding plaintiff lacked standing to sue as for fraud because of his status as a third-party beneficiary, but finding that his allegation that the "misrepresentation induced him to act" sufficient to satisfy the standing requirement).

On the facts here, Bankers' argument is nothing more than a red herring. Plaintiff does not premise her standing on her status as a third-party beneficiary. Rather, the complaint alleges (1) Heather Johnson was present for the agent's sales pitch when the alleged misrepresentation occurred (Am. Compl. (dkt. #22) ¶¶ 9-11); (2) she and her husband jointly decided to cash out their old annuity despite penalties and to purchase the Bankers annuity (*id.* at ¶ 12); and (3) the Johnsons used joint material assets to purchase the annuity (*id.* at ¶ 13). These allegations are sufficient to establish Article III standing, because, if true, the allegations demonstrate that Heather Johnson "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (internal citation and quotation marks omitted). Accordingly, the court will deny defendant's challenge to plaintiff's standing to pursue her claims.

## II. Breach of Fiduciary Duty Claim

Next, Bankers argues that plaintiff's breach of fiduciary duty claim should be dismissed because Bankers owed no such duty to the Johnsons. The court agrees that

9

plaintiffs' allegations fail as a matter of law to establish any fiduciary relationship existed between the Johnsons and Bankers generally, or Chapp specifically.   Accordingly, the court will grant defendant's motion to dismiss this claim.

Wisconsin recognizes two types of fiduciary relationships:   "(1) those specifically created by contract or a formal legal relationship such as principal and agent, attorney and client, trust and trustee, guardian and ward, and (2) those implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the questioned transactions."   *Prod. Credit Ass'n of Lancaster v. Croft*, 143 Wis. 2d 746, 423 N.W.2d 544, (Ct. App. 1988); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985) ("A fiduciary relationship arises from a formal commitment to act for the benefit of another (for example, a trustee) or from special circumstances from which the law will assume an obligation to act for another's benefit.").

As to the first kind of fiduciary relationship, Bankers argues that "[u]nder Wisconsin law, insurers do not owe fiduciary duties to *potential* purchasers of their policies."  (Def.'s Opening Br. (dkt. #26) 19 (citing *Novotny v. Nat'l W. Life Ins. Co.*, 212 Wis. 2d 639, 1997 WL 358749, at *2 (Ct. App. July 1, 1997) (unpublished); *Combined Investigative Servs., Inc. v. Scottdale Ins. Co.*, 165 Wis. 2d 262, 271, 477 N.W.2d 82 (Ct. App. 1991).)   The cases cited by Bankers, however, concern an insurer's duty to act in good faith in providing coverage.  Since that duty is limited to the terms of the contract,

the duty necessarily arises only after the purchase of the policy.[4]  Here, plaintiff's claim for breach of fiduciary duty is not premised on a failure to provide coverage, but rather to deal straightforwardly and fairly with a prospective purchaser of an annuity.  Still, the court agrees with defendants that a "formal commitment to act for the benefit of another" does not exist in Wisconsin law prior to the purchase of the annuity.

Here, the alleged breach of fiduciary duty occurred during Chapp's sales pitch to the Johnsons, which occurred over two years before the Johnsons decided to purchase the annuity.  In *Noonan* -- a case relied on by plaintiffs -- the alleged breach occurred in the payment of dividends under the annuities, in other words after a formal commitment to act for the benefit of another had been made.  *Noonan v. Nw. Mut. Life Ins. Co.*, 2004 WI App 154, ¶ 17, 276 Wis. 2d 33, 687 N.W.2d 254.

Plaintiff implicitly acknowledges that any fiduciary relationship must be premised on the second category -- ones that arise because of "special circumstances."  The court could not find -- nor did the parties direct the court to -- any cases recognizing "special circumstances" that create a fiduciary relationship arising out of the purchase of an annuity or an insurance policy generally (as opposed to the annuity contracts themselves).  This court, however, finds cases describing the fiduciary duties of financial

---

[4] In *Novotny*, the Court of Appeals affirmed the dismissal of a breach of fiduciary duty claim because plaintiffs simply alleged that the defendant insurer breached the insurance contract. 212 Wis. 2d 639, 1997 WL 358749, at *2. Contrary to Bankers' representation, there is *no* discussion in *Novotny* as to an insurer not owing a "fiduciary duty to policy purchaser at point of sale" or that "insurer's delivery of policy that did not conform to purchaser's specifications in application is deemed a counteroffer, as opposed to a breach of fiduciary duty." (Def.'s Opening Br. (dkt. #26) 19.)

investment brokers or banks analogous to the situation at issue here.   Indeed, the Wisconsin Supreme Court has indicated that "persons offering financial investment services have a fiduciary duty to disclose to their clients all material information concerning the transaction involved."  *Gries v. First Wis. Nat'l Bank of Milwaukee*, 82 Wis. 2d 774, 778, 262 N.W.2d 254, 256 (1978) (discussing holding in *Schweiger v. Lowei & Co., Inc.*, 65 Wis. 2d 56, 221 N.W.2d 882 (1974)).[5]

In more recent cases, however, the court appears to have walked back any broad application of a fiduciary relationship in the financial brokerage or banking arena.   For example, in *Merrill Lynch, Perce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605, 609 (1985) -- a case cited by plaintiff -- the court held that "a broker does not owe a fiduciary duty to an investor-customer who makes all of the investment decisions" (*i.e.*, where the relationship involves a "nondiscretionary account").   The court explained,

> [a] fiduciary relationship does not arise merely because a broker offers advice and counsel upon which a customer has a right to place trust and confidence.   The right to place trust and confidence in the reliability of representations involving commercial transactions already is protected by the law of misrepresentation.

*Id.*   Similarly, in *Croft*, the Wisconsin Court of Appeals rejected the plaintiff's argument that a fiduciary relationship arose out of defendant bank's "sophistication and superior knowledge in the marketplace regarding business, money and finances or [plaintiff's] reliance on the trust, honesty, integrity and representations of" the bank.   143 Wis. 2d at

---

[5] Plaintiff does not allege, and this court does not decide, whether the sale of the annuity at issue could constitute a "security" under federal or state law.

755, 423 N.W.2d at 547.  In so holding, the court specifically rejected the notion that fiduciary relationship arises "merely because advice and counsel is offered upon which a customer places trust and confidence."  *Id.* at 757, 423 N.W.2d at 548 (citing *Boeck*, 127 Wis. 2d at 136, 377 N.W.2d at 609); *see also Jackson v. McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 648 (E.D. Wis. 2011) ("[T]rust and confidence alone do not give rise to a fiduciary relationship.").

While plaintiff nevertheless argues that such "special circumstances" are present here because of "the inequality of the plaintiff's position compared to the defendant's agent, who made representation of fact allegedly based upon his superior knowledge of the annuity and its effect and purpose" (Pl.'s Opp'n (dkt. #29) 17), the case law described above forecloses a fiduciary relationship solely based on an alleged inequality of knowledge.  Accordingly, the court will grant defendant's motion to dismiss plaintiff's breach of fiduciary claim.[6]

---

[6] Given this holding, the court does not need to decide the merits of defendant's position that the language in the annuity policy itself suggesting that purchasers contact an attorney to understand the impact the annuity may have on Medicaid eligibility, either undermines the notion that the broker held a "position of trust" or discharges any fiduciary duty arguably owed.  The court also need not reach defendant's argument that such a claim is time barred, though it notes that plaintiff alleges that she only discovered the misrepresentation in late 2010 or early 2011, within two years of filing of the present action in November 2012.  (Pl.'s Opp'n (dkt. #29) 19-20).)    Whether Mrs. Johnson should have discovered the misrepresentation earlier is a fact issue, which cannot be resolved in a motion to dismiss.

## III.  Misrepresentation Claims

Bankers also moves to dismiss plaintiff's negligent and intentional misrepresentation claims, as well as her civil theft claim, which is premised on the same alleged misrepresentation.  First, defendant argues that the alleged misrepresentation at issue -- that the annuity would protect the assets of the deferred annuities from affecting Medicaid eligibility and spend down restrictions -- cannot form the basis of such a claim because it is either a legal opinion or an opinion about a future event (or both).  Second, defendant argues that plaintiff's misrepresentation claim fails as a matter of law because the "disclaimer" in the policy undermines any claim of reasonable reliance.  The court rejects both arguments.

### A.  Future Promise or Legal Opinion

Under Wisconsin law, "[a]n unfulfilled promise or statement of future events cannot provide the basis of a misrepresentation claim." *Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 627 (7th Cir. 1993); *see also Friends of Kenwood v. Green*, 2000 WI App 217, ¶ 17, 239 Wis. 2d 78, 619 N.W.2d 271 (finding statements reflecting "hopes for future events" without any "absolute promises" insufficient to support a misrepresentation claim).  Rather, misrepresentation claims "must relate to present or preexisting facts, not future ones." *Badger Pharmacal*, 1 F.3d at 627.  A "prediction may constitute fraud where the predictor is aware of present facts incompatible with the prediction or opinion." *Fed. Deposit Ins. Corp. v. Lauterbach*, 626 F.2d 1327, 1334 (7th Cir. 1980); *see also Hartwig v. Bitter*, 29 Wis. 2d 653, 139 N.W.2d 644, (1966) (a

14

misrepresentation claim may lie "when promises are made upon which the purchaser has a right to rely, and at the time of making them the promiser has a present intent not to perform them").

Here, plaintiff alleges that Chapp misrepresented a key feature of the annuity offered for sale to the Johnsons:  that the annuity and income derived from it would be excluded for purposes of determining Medicaid eligibility and spend down requirements. This alleged misrepresentation is not a promise or hope about future actions on the part of the promisor.  *E.g.*, *Badger Pharmacal*, 1 F.3d at 627 (finding Colgate's representations about future marketing plans were "promisory in nature, reflecting Colgate's future intent"); *Friends of Kenwood*, 2000 WI App 217, at ¶ 17 (concluding that "expressions of hope that the Kenwood Temple would remain as a part of the Congregation" could not form the basis of a misrepresentation claim).  Rather, plaintiffs allege that Chapp *knew at the time of the sale* that his representation was false or unsubstantiated.  (Am. Compl. (dkt. #22) ¶¶ 34, 37, 38, 43.)  As such, this representation concerns a present fact or, at least, is a prediction which is incompatible with present facts known to the speaker, either of which can form the basis of plaintiff's claims premised on a misrepresentation.  *See Hartwig*, 29 Wis. 2d at 658, 139 N.W.2d at 648 (denying motion to dismiss misrepresentation claim where defendant "knew that the 'prospects' in fact were not interested in the purchase or sale of property").

Bankers also argues that plaintiff's misrepresentations claims fail because any representation as to the annuity's effect on Medicaid eligibility and spend down requirements constitutes a legal opinion, which also cannot form the basis of a

15

misrepresentation claim.  In *Bentley v. Fayas*, 260 Wis. 177, 183, 50 N.W.2d 404, 408 (1951), the Wisconsin Supreme Court held that statement that an insurance policy carried by orchard operator would cover cherry picker employees could not form the basis of a misrepresentation claim because it was "no more than an innocent misrepresentation of law and not of fact."

Here, plaintiff alleges that the alleged misrepresentation was a key selling point of the annuity at issue and not an ancillary representation as part of a larger negotiation as was true in *Bentley*.  *See also Radford Co. v. Ruan Transport Corp.*, No. 08-C-461, 2009 WL 5216985, at *3 (E.D. Wis. Dec. 30, 2009) (finding defendant did not "misrepresent any fact about the agreement itself, it merely offered an opinion about a certain collateral *effect* of the agreement").  Moreover, here, defendant is making a factual representation, which might have legal consequences, about a product produced and sold by defendant, not a document for which the defendant has no more particularized knowledge or expertise than the plaintiff.  *See id.* (noting plaintiff had the "same relevant information" as defendant during the negotiation).

Still, whether the alleged misrepresentation constitutes a legal opinion is a closer question, and one plaintiff wholly fails to address.  Ultimately, it may be that statements made here regarding tax implications of an annuity rider are not actionable under Wisconsin law, but given the disparity in the parties' relationship, the implicit allegation that Bankers and Chapp knew or should have known that the tax consequences were other than represented, and the allegation that these tax advantages were the key to Bankers' marketing this annuity, the court will allow these claims to go forward for now.

16

### B.  Reasonable Reliance

Next, defendant points to the language in the policy (1) advising that "[t]his rider may have tax consequences or affect eligibility for Medicaid or other governmental benefits" and (2) suggesting that the purchaser "[c]onsult a tax advisor or attorney." Accordingly to defendant, this language undermines as a matter of law *any* finding that plaintiff's reliance on Chapp's alleged misrepresentation was reasonable or justified.  In support, defendant relies on the Seventh Circuit explanation in *Lauterbach*, 626 F.2d at 1334, that "[a] party presented with an opportunity to learn the truth may not ignore that opportunity and blindly rely upon another's representations where ordinary care would have revealed the truth."  (citing *Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 170 N.W.2d 807, 810-11 (1969)).  "Whether the exercise of ordinary care would have revealed the truth 'is to be determined in light of the intelligence and experience of the mislead individual.'"  *Lauterbach*, 626 F.2d at 1334 (citing *Williams*, 170 N.W.2d at 810-11).

As an initial observation, the language in the policy is not a true "disclaimer."  The language does not instruct the purchaser to disregard any other representations made about the policy.  *E.g. Drilling Consultants, Inc. v. First Montauk Securities Corp.*, No. 8:10-cv-2873, 2012 WL 3522607, at *6 (M.D. Fl. Aug. 14, 2012) (finding no reasonable reliance as a matter of law at summary judgment in part because document stated that defendant provides no tax advice); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1225 (S.D. Fla. 2010) (granting summary judgment for lack of reasonable reliance where

17

documents "plainly and expressly disclaim any promises or future tax benefits"); *Omni Home Financing, Inc. v. Hartford Life and Annuity Ins. Co.*, No. 06cv0921 IEG (JMA), 2008 WL 1925248, at *5 (S.D. Cal. Apr. 29, 2008) (granting summary judgment to defendant on fraud claim where document "explained plaintiffs should not rely on defendants for legal and tax advice").  Rather, it simply recommends that the purchaser contact a tax advisor or attorney to understand the specific individual ramifications.  Nothing about this so-called disclaimer would alert a purchaser of the annuity that Chapp's alleged representations about the policy could not be trusted.

While the language may certainly be received by some as a warning, whether this language undercuts a finding of reasonable reliance is ordinarily a question of fact.  *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 767-68 (7th Cir. 2010) (discussing Wisconsin law) (citing *Sciano v. Hengle*, 1 Wis. 2d 273, 83 N.W.2d 689, 692 (1957)).  This is no doubt why cases cited by defendant in support of a court finding that plaintiff's claim fails for lack of reasonable reliance, all involve motions for summary judgment.  *See Lauterbach*, 626 F.2d at 13367-37 (affirming grant of summary judgment to defendants on fraud claim in part because plaintiffs were aware of enough facts to require further investigation); *Waukesha Cnty., Wis. v. Nationwide Life Ins. Co.*, No. 06-C-0656-C, 2007 WL 5595893, at *11 (W.D. Wis. Oct. 12, 2007) (granting summary judgment to defendant on misrepresentation claims because plaintiff's reliance on fact sheets on defendant's website to assess its own risk was unreasonable); *see also Drilling Consultants, Inc.*, 2012 WL 3522607; *Zarrella*, 755 F. Supp. 2d 1218; *Omni Home Financing, Inc.*, 2008 WL 1925248.

18

## IV.  WOCCA Claim

Finally, while Bankers moves to dismiss plaintiff's WOCCA claim on several grounds, the court need only address one:  plaintiff's failure to adequately allege an enterprise separate and distinct from the defendant.  WOCCA, Wis. Stat. § 946.83(3), provides in pertinent part:  "No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity."  Putting aside the injury requirements, plaintiff acknowledges that to state a WOCCA violation, she "must allege that defendant (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity."  (Pl.'s Opp'n (dkt. #24) 29.)  *See also Evers v. Calhoon*, 185 Wis. 2d 710, 520 N.W.2d 111, 1994 WL 171973, at *3 (Ct. App. May 3, 1994).

It is well established that the "person" or defendant must be separate from the "enterprise."  *See, e.g., State v. Judd*, 147 Wis. 2d 398, 402, 433 N.W.2d 260, 262 (Ct. App. 1988) (holding, consistent with RICO, that Wis. Stat. "§ 946.83(3) can only be interpreted to require the person to be separate from the enterprise"); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (explaining that RICO requires that a plaintiff must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name"); *see also Baker v. IBP, Inc.*, 357, F.3d 685, 691-92 (7th Cir. 2004) ("Without a

difference between the defendant and the 'enterprise' there can be no violation of RICO.").[7]

The sole defendant in this action is Bankers, and therefore Bankers is necessarily the "person" alleged to have violated WOCCA.  Plaintiff also alleges in her amended complaint that Bankers "is an 'enterprise' within the meaning of Wis. Stat. § 946.87(4)." (Am. Compl. (dkt. #22) ¶ 49; *see also* Pl.'s Opp'n (dkt. #29) 24 (citing to allegation that Bankers is the alleged "enterprise" under WOCCA).)  Because the pleadings in the complaint as to this element of a WOCCA claim are not only insufficient, but affirmatively allege facts demonstrating that plaintiff cannot prevail as a matter of law, the court will grant defendant's motion to dismiss this claim with prejudice.[8]

ORDER

IT IS ORDERED that:

1)  Defendant Bankers Life and Casualty Company's motion to dismiss the amended complaint (dkt. #25) is GRANTED as to plaintiff's breach of fiduciary duty claim (first cause of action) and WOCCA, Wis. Stat. §946.83, claim (fifth cause of action) and DENIED in all other respects; and

2)  Defendant's motion for submission of material outside of pleadings (dkt. #27) is GRANTED IN PART AND DENIED IN PART as provided in the above opinion.

---

[7] Wisconsin courts have instructed that "case law interpreting RICO is persuasive authority when [] interpret[ing] WOCCA."  *MBS-Certified Public Accountants, LLC v. Wis. Bell Inc.*, 2013 WI App 14, ¶ 22, 346 Wis. 2d 173, 828 N.W.2d 575 (citing *State v. O'Connell*, 179 Wis. 2d 598, 606, 508 N.W.2d 23 (Ct. App. 1993).

[8] In light of this finding, the court need not address defendant's argument that plaintiff has failed to allege legally cognizable damages.

Entered this 20th day of September, 2013.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge