IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HEATHER JOHNSON, on behalf of herself
and all others similarly situated, and NANCY
WEINREIS,

|  |  |  |
|---|---|---|
| | Plaintiffs, | OPINION AND ORDER |
| v. | | 13-cv-144-wmc |

BANKERS LIFE AND CASUALTY
COMPANY,

Defendant.

---

In this putative class action, plaintiffs Heather Johnson and Nancy Weinreis allege that defendant Bankers Life and Casualty Company ("Bankers") negligently and intentionally misrepresented the advantages of purchasing a so-called "Medicaid Annuity." Before the court are several motions, including plaintiffs' motion for summary judgment. Because the undisputed facts demonstrate that plaintiffs have not suffered an injury and are not at risk of suffering one, the court will deny plaintiffs' motion for summary judgment, deny as moot their motion for class certification, and dismiss this action for lack of standing.

UNDISPUTED FACTS[1]

**A.  Overview of Medicaid Annuities**

Medicaid Annuities are designed to exclude a portion of an individual's assets from consideration in determining his or her eligibility for Medicaid while providing an immediate or deferred income stream to that individual's designated beneficiary.  For example, the spouse of an individual who is (or may soon be) receiving care in a nursing home may receive income as the beneficiary of the purchased annuity, while the value of the annuity, including the income stream, is excluded for purposes of determining the spouse's eligibility for Medicaid.  Medicaid Annuities are a "common and accepted form of estate planning to qualify Wisconsin residents for Medicaid."  (Expert Report of Scott Thompson ("Thompson Rept.") (dkt. #124.) 4; *see also* Deposition of Kimberly A. Shaul ("Shaul Depo.") (dkt. #105-16) (plaintiff's expert acknowledging that there is "nothing illegal in Wisconsin about using an annuity to make an individual eligible for Medicaid").)

Under regulations adopted by the then Wisconsin Department of Health Services as the Medicaid administrator, once a stream of income payments begins (known as "annuitizing"), neither the corpus of the annuity nor the income stream are considered "available" or "countable" assets in determining Medicaid eligibility.  The parties agree that this "annuitization" is crucial, because a Medicaid Annuity is only effective in

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed in light of the court's finding that plaintiffs lack constitutional standing to bring their claims.  Many of the parties' proposed findings of facts are not material to the court's disposition and, therefore, are only included if helpful for context.

excluding assets from consideration of an individual's eligibility if the annuity is paying income.  Even so, according to the uncontradicted affidavit of defendant's expert, Scott Thompson, however, a failure to annuitize presents no serious impediment to an applicant's obtaining Medicaid eligibility, since an intake social worker at a nursing home is likely to instruct the applicant to have the beneficiary start taking income from the annuity so as to protect it from Medicaid's spend-down rules.  (Thompson Depo. (dkt. #148) 41-43.)

### B.  Bankers Medicaid Annuity

Beginning in 2004, Wisconsin law changed such that only annuities that "cannot be surrendered" could be considered unavailable assets and therefore not counted in determining Medicaid eligibility.  (Def.'s PFOFs (dkt. #108) ¶ 12.)[2]  Responding to this change in the law, Bankers designed a Medicaid Annuity to be competitive in the market, which contained the following "Annuity Income Preservation Amendment Rider":

---

[2]  Defendants submit several other proposed findings of facts, none of which are materially disputed, regarding this so-called "secondary market test."  Since none are relevant to plaintiffs' claims, except for further context, they are not set forth in this opinion.  (Def.'s PFOFs (dkt. #108) ¶¶ 11-14.)

TAX AND LEGAL CONSEQUENCES

This rider may have tax consequences or affect eligibility for Medicaid or other government benefits.  Consult a tax advisor or attorney to assess the impact of this rider on Your specific situation.

ANNUITY INCOME PRESERVATION BENEFIT

The policy is amended as follows:

A.    This rider deletes any language in the policy stating that the Owner, after the Income Benefit or Monthly Income begins,  can: (1) assign or transfer the policy; (2) change the payee; or (3) change or affect the payment plan or income benefit.

B.    The following provision is added:

RESTRICTIONS ON PAYMENT PLANS ONCE INCOME BEGINS
      Once income begins, no one receiving payments under the payment plan may do anything that would in any way change or affect the plan.  This includes:

1.  Commuting, deferring or accelerating payments;
2.  Changing the annuitant, owner, payee or beneficiary;
3.  Assigning or transferring the policy; or
4.  Surrendering the policy.

(2nd Am. Compl., Ex. A (dkt. #55-1) 9.)  Bankers began selling annuities with the Rider after it was approved by the Wisconsin Office of the Commissioner of Insurance ("OCI") in 2004.  (Def.'s PFOFS (dkt. #108) ¶ 28.)

From 2004 through 2008, Bankers sold 3,599 Medicaid Annuities with the Rider to 1,568 unique customers (some bought more than one) through 200-400 different agents across Bankers' seven offices.  The parties agree that the Rider was effective in insuring that Bankers' Annuities with *annuitized* income streams (annuities that had begun paying out) were deemed unavailable or non-countable for determining eligibility of an individual applying for Medicaid in Wisconsin.

## C.  Johnsons' Purchase of Bankers Annuity

In late 2007 or early 2008, plaintiff Heather Johnson and her deceased husband, Gary Johnson, purchased a Bankers annuity with the Rider from Bankers' agent, Craig

4

Chapp.[3]  Plaintiff contends that during a meeting, Chapp represented that the Rider would protect the assets of the annuity from Medicaid thereby allowing the Johnsons to take advantage of government aid and benefits for which they were eligible without having to use the assets of the annuity to pay for a nursing home or any other type of long-term care.   Heather Johnson testified at her deposition, however, that she understood the express language quoted above in the Rider to mean that the Bankers annuity would not automatically make the Johnsons eligible for Medicaid, but that it "may yes or may no" be deemed an excluded asset if Mr. Johnson applied for Medicaid. (Def.'s Resp. to Pls.' PFOFs (dkt. #110) ¶ 4 (citing Deposition of Heather Johnson ("Johnson Depo.") (dkt. #117) 114:1-10).)[4]

Gary Johnson passed away in August 2008.  Sometime after his death, likely in late fall 2010, Chapp called Heather Johnson to inform her of his discovery that the Rider was "ineffective."  (Def.'s Resp. to Pls.' PFOFS (dkt. #110) ¶ 10 (citing Johnson Depo. (dkt. #117) 131-132.)   Because Mr. Johnson died before seeking Medicaid, however, Ms. Johnson admitted in her deposition that she does not know if the Rider would have shielded their assets in the Bankers annuity from Medicaid spend down rules. (Def.'s Resp. to Pl.'s PFOFs (dkt. #110) ¶ 4 (citing Johnson Depo. (dkt. #117) 127.) Defendant's expert, however, concedes that the annuity was not annuitized (paying out)

---

[3] The court will address below in its opinion defendant's unsuccessful attempt to dispute that Ms. Johnson participated in the purchase of an annuity.

[4] Ultimately, for reasons explained below, any disputes over Johnson's understanding of the Rider, Chapp's specific representations to the Johnsons during the sale's meeting, or whether Chapp was following a "uniform script" are not material.

at the time of Mr. Johnson's death.  (Pls.' Reply to Pls.' PFOFs (dkt. #129) ¶ 8 (citing Deposition of Scott Thompson ("Thompson Depo.") (dkt. #118) 42-43.)

PRELIMINARY MATTER

Pursuant to Federal Rule of Civil Procedure 37(b)(2), plaintiffs move to strike the testimony and expert report of Robert L. Klein as a sanction for Bankers' alleged misconduct during discovery.  (Dkt. #87.)  Klein's testimony and report goes to whether this action may be certified as a class action.  Because the court will dismiss this case based on the named plaintiffs' lack of standing, it need not reach the motion for class certification and, arguably, this motion to strike.  Given plaintiffs' allegations and the seriousness of a request for sanctions, however, the court will briefly explain its reasons for addressing and denying the motion.

Plaintiffs object to Bankers providing Klein with the full list and contact information of those persons who purchased Bankers' Annuities with the Rider to conduct a survey regarding (1) why each purchased the annuity and (2) what they were told at the time of purchase.   (Pls.' Br. in Supp. of Mot. to Strike (dkt. #88) 3.) Plaintiffs contend that Bankers' release of this data and Klein's subsequent contact of putative class members runs counter to certain representations made by defendant in opposing plaintiffs' requests for discovery concerning class members' contact information.

As described in the court's prior order dealing with plaintiffs' motion to compel this information, the court rejected plaintiffs' argument that defendant had an *obligation* to disclose class members' actual contact information, viewing this issue as distinct from

6

plaintiffs' right to contact members of the putative class.  (9/30/13 Op. & Order (dkt. #80) 2-3 (discussing *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978)).)  Still, relying on *Oppenheimer*, the court found that plaintiff had demonstrated that disclosure of a subset of customer contact information may be relevant to Rule 23 issues, and therefore granted plaintiffs' motion in part, requiring disclosure of a randomly-selected list of 50 customers.  (*Id.* at 3-4.)

Nevertheless, plaintiffs argue that the subsequent disclosure of the *full* customer list to Klein and his contact of some subset of the individuals on that list runs counter to positions taken by defendant in opposing plaintiffs' requests for a similar disclosure. *First*, plaintiffs contend that defendant represented to the court that the collection and disclosure of this information would be "tedious," "time-consuming" and "costly," yet apparently then undertook exactly this task for its own expert's use in this case.  (Pls.' Br. (dkt. #88) 2-3.)  As defendant points out in its opposition to the motion for sanctions, however, it never raised burden as a basis for opposing plaintiffs' request for disclosure. (Def.'s Opp'n (dkt. #104) 24-25.)  Rather, the language quoted by plaintiffs referred to Bankers statements about document discovery concerning the Rider generally.  (*Id.* at 25 n.18.)  Moreover, even if burden had been raised along with representations as to time and cost, the court's subsequent order that Bankers produce a randomly-selected list of 50 obviously reduced those burdens, if not wholly than rationally.  Regardless, the court can find no basis to conclude these representations were made in bad faith.

*Second*, plaintiffs contend that defendant opposed plaintiffs' request in part because of concerns about their customers' privacy rights and relatedly concerns about

dragging "putative class members into the discovery fold."  (Pls.' Br. (dkt. #88) 2 (quoting defendants' opposition).  While this argument fairs better than the first, the court is satisfied Bankers privacy or harassment concerns may have been real, but were ameliorated by having a third-party research company retained by defendant's expert contact a select group of putative class members, rather than Bankers' attorneys or Bankers itself.  Moreover, as Bankers argues, *Gulf Oil* and its progeny allow for contact with putative class members, absent concerns for abuse which are not -- or, at least, do not appear to be -- present here.  If plaintiffs truly wished to conduct a more robust survey -- extending beyond the 50 customers ordered disclosed by the court -- they could have made this argument to the court in a subsequent motion seeking more disclosure, particularly after learning of the broader disclosure to Bankers' expert, rather than seeking to bar defendant's expert from testifying altogether.

Even if the court were persuaded by the substance of plaintiffs' argument, Rule 37(b)(2)(C) only allows for sanctions for conduct in violation of a court order.  Here, the court ordered defendant to produce a random selection of 50 customers, which it did. While plaintiffs hint that the court could also rely on its inherent authority to sanction defendant, the court does not find that any arguable lack of candor by defendant rises to the level of willful abuse of the judicial process or bad faith in conducting litigation warranting sanctions under the court's inherent authority.  *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012) ("Sanctions imposed pursuant to the district court's *662 inherent power are appropriate where a party has willfully abused the judicial process or

otherwise conducted litigation in bad faith."). Accordingly, the court will deny plaintiffs'

motion to strike the expert report and testimony of Robert Klein.

OPINION

In considering plaintiffs' motion for summary judgment as the party with the

burden of proof at trial, the evidence must be "so one-sided that [they] must prevail as a

matter of law." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011)

(quoting *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir.

1992)). This is a high burden, but the court need not reach the merits of plaintiffs'

arguments because the undisputed record demonstrates that neither plaintiff suffered an

actual injury or is at risk of suffering an imminent injury as required to meet the first

element of constitutional standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

61 (1992).[5]

Defendant actually raises two standing challenges in opposition to plaintiffs'

motion for summary judgment. The first, directed only at plaintiff Heather Johnson,

concerns non-constitutional or prudential standing based on whether she has an interest

in this action, as opposed to her late-husband Gary Johnson, whose estate is not named

as plaintiff. *See, e.g., Edgewood Manor Apartment Homes v. RSUI Indem. Co.*, 733 F.3d 761,

771 (7th Cir. 2013) ("There are constitutional minimums for standing to sue in federal

---

[5] While the court does not reach the merits of plaintiffs' claims, the court notes that Wisconsin
does not recognize a claim for strict responsibility for misrepresentation or negligent
misrepresentation based on a failure to disclose. *See Eberts v. Goderstad*, 569 F.3d 757, 765 (7th
Cir. 2009) (citing *Kaloti Enter., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 13 n.3, 283 Wis. 2d 555,
699 N.W.2d 205).

court; there are also 'prudential' standing requirements, one of which is that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation marks and citation omitted)).  This is the same argument raised in defendant's motion to dismiss.  The second challenge involves both plaintiffs and concerns whether they have suffered an actual or will suffer an imminent injury necessary to establish constitutional standing.


## I.  Prudential Standing

Bankers asserts that Gary Johnson, not plaintiff Heather Johnson, purchased the Bankers Annuity at issue in this case.  (Def.'s Resp. to Pls.' PFOFs (dkt. #110) ¶ 1.)  In response, Ms. Johnson contends that the court already decided this issue as part of its decision on defendant's motion to dismiss.

The court actually found in its opinion and order Heather Johnson had standing *as alleged,* the complaint having alleged that:  (1) she "was present for the agent's sales pitch when the alleged misrepresentation occurred; (2) she and her husband jointly decided to cash out their old annuity despite penalties to purchase the Bankers annuity; and (3) the Johnsons used joint [marital] assets to purchase the annuity."  (9/20/13 Op. & Order (dkt. #79) 9 (citations to amended complaint omitted).)  Now, at summary judgment, defendant contends that at least the first allegation was not *in fact* true, because Ms. Johnson was not involved in the purchase decision.  In support, defendant points to the following passages from her deposition:

> Q.  And the Bankers annuity with the rider was a new product, and all you knew about it was what an insurance

salesman told you about it; and so Mr. Johnson naturally, because he was a wise and prudent, smart man, did some due diligence about the investment before he made it; right?

A. Yes.

. . .

Q. Okay. Okay. [The application for the annuity is] signed on December 18th, 2007. Do you see that?

A. Yes.

Q. Were you there when this document was filled out and signed?

A. I believe so.

Q. Now, if you turn just a few pages, you'll see there's a Sample Calculation of Index Credit.

A. Yes.

Q. Not, if you look, Mr. Johnson signed this, and this is dated December 19th.

A. Yeah.

. . .

A. No. When Gary bought his annuity in '07, I bought . . .

(Def.'s Resp. to Pls.' PFOFs (dkt. #110) (citing Deposition of Heather Johnson ("Johnson Depo.") (dkt. #117) 103:10-16, 123:9-20, 166:18.)

However, none of these passages raise a genuine issue of material fact as to whether plaintiff Heather Johnson was present for the sales pitch, much less made a joint decision with her husband to purchase the annuity or that marital assets were used to purchase it. Moreover, in her affidavit submitted in support of plaintiffs' motion for summary judgment, Johnson avers that (1) she and her husband purchased the annuity;

11

(2) she was present at the meeting with Mr. Chapp; and (3) the annuity was purchased with funds liquidated from another annuity they had purchased together. (Affidavit of Heather Johnson (dkt. #93) ¶¶ 1, 3, 6.) As such, the court finds that Heather Johnson satisfies the prudential standing requirement of being the real party in suit, or that at the very least, a genuine issue of material fact exists on this issue.

## II. Constitutional Standing

While Johnson may meet the requirements for prudential standing, both her claim and that of co-plaintiff Nancy Weinreis falter when it comes to meeting their burden to prove an injury sufficient for constitutional standing. *See Edgewood Manor Apartment Homes*, 733 F.3d at 771 ("The party invoking federal jurisdiction bears the burden of establishing the[] elements" for standing and plaintiff "can no longer rest on . . . 'mere allegations' at summary judgment.") (quoting *Lujan*, 504 U.S. at 561).

The question of standing is a jurisdictional prerequisite under Article III of the Constitution. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).[6] To establish standing, a plaintiff must demonstrate:

---

[6] The challenge to standing was raised in defendant's opposition to plaintiffs' motion for summary judgment, and not as part of defendant's own motion. In light of this posture, entering judgment in favor of the non-moving party might normally be problematic under Fed. R. Civ. P. 56(f), providing certain limits on judgment independent of a motion. Here, however, the court has an independent duty to ensure that plaintiffs have standing, and therefore Rule 56(f) is not implicated. *U.S. v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817-18 (7th Cir. 2013) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." (quotation marks omitted) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990))). Moreover, plaintiffs were no notice of this challenge and had an opportunity to respond as part of their reply submission.

> (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (internal quotation omitted); *see also Lujan*, 504 U.S. at 560.

It is undisputed that Mr. Johnson died on August 8, 2008, without ever seeking Medicaid.  (Def.'s Resp. to Pls.' PFOFs (dkt. #110) ¶ 5 (citing Johnson Depo. (dkt. #117) 126:10-14).)  Because Mr. Johnson never sought Medicaid benefits, the Bankers Annuity Rider was never put to use.  Moreover, it is undisputed that after Gary Johnson's death, Heather Johnson received the full proceeds from their Bankers annuity as the named beneficiary.  (Declaration of Adam J. Kaiser, Ex. C (dkt. #13-3).)  As such, there is no actual injury -- the Rider did not fail to work as promised, nor is there any threat of future injury (imminent or otherwise).  Now that the annuity proceeds have been paid to Heather Johnson, there is also no risk that the annuity would not work as promised sometime in the future.

Plaintiffs nevertheless persist in their argument that the annuity was not effective, because it was not annuitized at the time of Gary Johnson's death, and the experts agree that the annuity would have had to have been annuitized to protect his assets from Medicaid spend-down rules.  (Pls.' Reply to Pls.' PFOFs (dkt. #129) ¶ 4.)  However, any injury from the *possibility* that the annuity would not have worked as promised, if it had been tested, is too hypothetical or speculative to satisfy the injury requirement for constitutional standing.  *See DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 596 (7th Cir. 2005)

13

("Mere speculation is not enough to establish an injury in fact." (internal citation and quotation marks omitted)).

Citing only the amended complaint as support, Johnson also claims that she and her late husband "lost thousands of dollars when they cashed out other investments in order to fund the annuity purchased from defendant."  (Pls.' PFOFs (dkt. #98) ¶ 29.) Any loss of income associated with the Johnsons' decision to cash out other investments to purchase the annuity, however, was not caused by the Rider not working as promised. Perhaps the Johnsons made a regrettable financial decision by buying a product with a feature that ultimately proved unnecessary, however, this was not caused by the alleged misrepresentations, but rather by the decision to purchase a product with the promise of excluding its value from Medicaid spend-down requirements.

While plaintiff Weinreis is not a focus of plaintiffs' motion for summary judgment, she too admitted in her deposition to being unaware of anyone who suffered an adverse eligibility ruling in reliance on the Rider to protect assets from Medicaid spend-down requirements.  (Deposition of Nancy Weinreis (dkt. #115) 76.)  From this, the court infers that Weinreis's *own* eligibility for Medicare was not adversely impacted by her reliance on the Rider.  As with Johnson, Weinreis, therefore, has not suffered an actual injury, and there is no risk of future injury because Weinreis now knows to "annuitize" for the annuity to be excluded from Medicaid spend-down requirements.

Even if there were some possible injury, it is neither imminent nor particular to satisfy the standing requirement.[7]

At its heart, plaintiffs' complaint is simply that Bankers failed to tell its customers the full story regarding the extent to which its Medicaid annuities might not be excluded from eligibility requirements, but plaintiffs have *not* established, nor on the undisputed facts here could they establish, that any harm was caused by this failure (assuming there was a failure).  Indeed, plaintiffs' complaint is comparable to other claims dismissed for lack of standing.  For example, in the consumer product context, courts routinely find lack of standing where -- while a product may have been defective in the hands of others -- the individual plaintiffs did not suffer the defect and, therefore, suffered no injury.  *See, e.g.*, *Rule v. Fort Dodge Animal Health, Inc.*  607 F.3d 250, 252 (1st Cir. 2010) ("Recovery generally is not available under the warranty of merchantability where the defect that made the product unfit caused no injury to the claimant, the threat is now gone and nothing now possessed by the claimant has been lessened in value.").  Similarly, courts have dismissed procedural due process claims where the plaintiff was not injured by a deficiency in a notice or some other procedural requirement.  *See, e.g.*, *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 945 (10th Cir. 2003) (finding that plaintiffs lacked standing to pursue a class action challenging the notice on a parking ticket because neither plaintiff has a legal basis for challenging the ticket).

---

[7] Even if Weinreis had standing, the court previously found her inadequate to serve as a class representative.  (9/30/13 Op. & Order (dkt. #80) 5-6 (granting plaintiffs leave to add Weinreis as a plaintiff but finding her "wholly inadequate class representative" because of her "conflict of interest with the class as a former employee/agent of Bankers").)

Indeed, the *only* evidence in the record is that even if the annuity suffered from a defect -- namely, that it only protected assets if annuitized -- this so-called defect was easily fixable.   As defendants' expert explained, faced with an annuity where the applicant had not yet taken income from it, an intake social worker at a nursing home would likely simply instruct the applicant to annuitize it (*e.g.*, start taking income from it) so as to protect it from Medicaid's spend-down rules.  (Thompson Depo. (dkt. #148) 41-43.)

## III.  Effect of Dismissal on Class Action

While the court finds that the plaintiffs in this action lack standing, a member of the putative class *may* have suffered an injury because of defendant's alleged misrepresentations.   Indeed, plaintiffs submitted an affidavit from a putative class member in which she avers that "the rider did not protect our assets as represented by Banker[s'] agent" when her husband entered an assisted living facility.   (Affidavit of Patricia Kiley (dkt. #95) ¶¶ 7-8.)  Even so, the fact that *someone* may have standing does not cure plaintiffs' lack thereof.  *See Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (noting that "standing cannot be acquired through the back door of a class action") (quotation omitted); *see also Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008) (deciding individual standing to pursue injunctive relief prior to evaluating class certification issues).

Having found both plaintiffs lack standing to bring suit, the court must dismiss this case.  *See Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) (holding that if

named plaintiff's claim becomes moot before certification, suit must be dismissed because no one has a legally protected interest in litigation); *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007) ("[I]f the would-be representative's claim becomes moot before certification, then the case must be dismissed."). Accordingly, the court will also deny plaintiffs' motion for class certification as moot.[8]

## ORDER

IT IS ORDERED that:

1) plaintiffs Heather Johnson and Nancy Weinreis's motion to strike testimony and expert report of Robert L. Klein (dkt. #87) is DENIED;

2) plaintiffs' motion for summary judgment (dkt. #90) is DENIED;

3) plaintiffs' motion for class certification under Rule 23 (dkt. #130) is DENIED as moot;

4) the parties' joint motion for extensions of time (dkt. #137) is DENIED as moot;

5) plaintiffs' claims are DISMISSED with prejudice for lack of standing; and

6) the clerk of court is directed to close this case.

Entered this 12th day of September, 2014.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge

---

[8] While obviously not reaching the merits of plaintiffs' motion for class certification, the court would be remiss not to point out that that certification seems unlikely given that plaintiffs' claims appear to be so closely tied to issues concerning the claimed misrepresentations and omissions about the Rider in the sales pitch of individual agents and each class member's claimed reliance on those. *See, e.g.*, *Wiedenbeck v. Cinergy Health, Inc.*, No. 12-cv-508-wmc, 2013 WL 5308206, at *9-11 (W.D. Wis. Sept. 10, 2013) (denying motion for class certification of similar claims concerning alleged misrepresentations in individual sales calls).